UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 21-0019-01 |
| VERSUS | JUDGE DONALD E. WALTER |
| KENRIC W. YOUNG | MAGISTRATE JUDGE HORNSBY |

---

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss Counts Three and Four of the Indictment filed by Defendant, Kenric Wayne Young ("Young"). See Record Document 27. The Government filed an opposition. See Record Document 28. For the reasons assigned below, Defendant's motion is **DENIED**.

## BACKGROUND

On January 9, 2021, Young was arrested as a result of a proactive investigation of local gang members led by officers of the Shreveport Police Department ("SPD") and the Federal Bureau of Investigation ("FBI"). See Record Document 28 at 2. Following a traffic infraction in an area that was actively surveilled by the officers, Defendant stopped in front of 2983 Victor Street, a residence known to be a local drug distribution site. See id. at 3. Suspicious, the officers attempted to conduct a traffic stop of Young's vehicle for the failure to signal the previous turn and utilized their lights and sirens to direct him to stop the vehicle. See id. Nevertheless, Defendant continued westbound down Victor Street until it intersected with David Raines Road. See id. There, he traveled southbound to a residence located at 1845 David Raines Road, where he was apprehended and searched by the officers. See id. During the search incident to arrest, the police seized four packages of marijuana weighing approximately 116 grams in total and about $5,000 in

cash. See id. During the post-arrest interrogation, Defendant confessed to having four packages of marijuana on him, however, he denied any involvement with or living at 2983 Victor Street. See id. at 4. Further investigation revealed that Young was in possession of six to eight vacuum style bags of an unknown substance, which led to the preparation of a search warrant for the residence located at 2983 Victor Street. See id. Members of the police utilized two keys seized from the Defendant in order to gain access to the above-indicated address. See id. As the officers proceeded, a K-9 alerted to the presence of narcotics at the steps leading to the house as well as inside one of the vehicles parked at the property. See id. Although there were no narcotics found in the vehicle, the officers were able to retrieve methamphetamine, drug paraphernalia and a Glock MOD 23 .40 caliber firearm from underneath the front porch of the residence at located at 2983 Victor Street. See id.

On January 27, 2021, a federal grand jury returned a four-count Indictment charging Young with the following: (1) Count One - Possession with Intent to Distribute Methamphetamine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii); (2) Count Two - Possession with Intent to Distribute Marijuana, 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); (3) Count Three - Possession of a Firearm in Furtherance of Drug Trafficking, 18 U.S.C. § 924(c)(1); and (4) Count Four - Possession of a Firearm by a Convicted Felon, 18 U.S.C. §§ 922(g)(1) and 924(a)(2). See Record Documents 1, 2 and 28 at 1. Young was previously convicted in 2003 and 2012 for Possession with Intent to Distribute marijuana and cocaine, respectively. See Record Document 28 at 2.

Defendant argues that Counts Three and Four of the Indictment should be dismissed because they violate the Second Amendment to the United States Constitution by infringing on his right to keep and bear arms. See Record Document 27 at 3. The Government opposes this motion,

arguing that that felons can be constitutionally disarmed, and that history supports this finding. See Record Document 28 at 1.

## MOTION TO DISMISS STANDARD

Federal Rule of Criminal Procedure 12 allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(1). It further provides that a party may raise a claim that the indictment is legally defective for failure to state an offense. See Fed. R. Crim. P. 12(b)(3)(B)(v). To be legally sufficient, an indictment need only (1) enumerate each element of the charged offense, (2) fairly inform the defendant of the charges filed against him, and (3) provide the defendant with a double jeopardy defense against future prosecution. See United States v. Braun, 453 F. Supp. 3d 883, 886 (M.D. La. 2020); see also United States v. Crinel, No. 15-61, 2015 WL 3755896, at *3 (E.D. La. June 16, 2015) (citing United States v. Gaytan, 74 F.3d 545, 551 (5th Cir. 1996)). The court is required to take the allegations of the indictment as true. See United States v. Hogue, 132 F.3d 1087, 1089 (5th Cir. 1998).

## ANALYSIS

Young maintains that 18 U.S.C. §§ 922(g)(1) and 924(c) are unconstitutional because the plain text of the Second Amendment covers firearm possession and the Government failed to establish that the restriction is consistent with the Nation's historical tradition of firearms regulation. The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. However, it is well-established that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." District of Columbia v. Heller, 554 S. Ct. 570, 128 S. Ct. 2783 (2008).

A.  **Constitutionality Of 18 U.S.C. § 922(g)(1).**

Section 922(g)(1) provides that "it shall be unlawful for any person [ ] who has been convicted in any court of [ ] a crime punishable by imprisonment for a term exceeding one year [ ] to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Young argues that since the plain text of the Second Amendment covers his conduct and he is deemed one of "the people", his actions are protected by the Second Amendment. See Record Document 27 at 3. As a result, he argues that Section 922(g)(1) is not consistent with the Nation's historical tradition of firearm regulation and therefore violates the Second Amendment under New York State Rifle & Pistol Association, Inc. v. Bruen, 597 U.S. 1, 142 S. Ct. 2111 (2022), which established a two-prong test for the constitutionality of firearm regulations. See Record Document 27 at 2 and 3. Young relies on the recent ruling in United States v. Jessie Bullock wherein District Judge J. Reeves held that the federal felon-in-possession law was unconstitutional as applied to the defendant. See United States v. Jessie Bullock, No. 18-165, 2023 WL 4232309 (S.D. Miss. June 28, 2023).[1] The Government argues that Bruen did not call into question felon dispossession statutes like Section 922(g)(1) and is therefore inapplicable in this case, and, even if Bruen did apply, Section 922(g)(1) would satisfy its historical analogy test. See Record Document 28 at 4-5, 7. The Government argues that Bruen concerned

---

[1] In Bullock, Judge Reeves found the government failed to prove the restriction of firearm possession was consistent with the Nation's historical tradition of firearm regulation after conducting a detailed analysis of the historical content of restriction of felony possession of firearms. This Court respectfully disagrees with the decision in Bullock for two reasons: first, the United States Supreme Court has spoken in Heller and in Bruen that the United States has a longstanding prohibition on the possession of firearms by felons, thereby already deciding that issue; and second, that the Fifth Circuit Court of Appeals jurisprudence shows convicted felons are not covered by the plain text of the Second Amendment. See, e.g., United States v. Singleton, No. 23-00243-01, 2023 WL 8936709, at *4 (W.D. La. Dec. 27, 2023).

firearm regulations aimed at "law abiding citizens" and not Section 922(g)(1) whose elements limit itself to regulating non-law-abiding citizens. See id. at 6.

The United States Supreme Court in Heller held that "the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right" for individuals to "possess and carry weapons in case of confrontation." Heller, 554 U.S. at 592, 128 S. Ct. at 2797. The Court noted that this right can be subject to certain restrictions, including those "longstanding prohibitions on the possession of firearms by felons and the mentally ill." Id. at 626, 128 S. Ct. at 2817.[2] Additionally, the Court held that the Second Amendment protects the right of "law-abiding, responsible citizens" to keep firearms in their homes for self-defense. Id. at 635, 128 S. Ct. 2821; see also United States v. Hernandez, No 3:23-CR-0056-B, 2023 WL 4161203, at *6 (N.D. Tex. June 23, 2023) (citing Medina v. Whitaker, 913 F.3d 152, 158 (D.C. Cir. 2019) (quoting Hamilton v. Pallozzi, 848 F.3d 614, 626 (4th Cir. 2017)), and noting that "[f]elonies remain the most serious category of crime and reflect a 'grave misjudgment and maladjustment.'"). Nonetheless, Heller clarified that "nothing in [its] opinion should be taken to cast doubt" on certain "presumptively lawful regulatory measures," such as "longstanding prohibitions on the possession of firearms by felons." Id. at 626-27 n.26., 128 S. Ct. at 2816.

The Supreme Court in Bruen held that when the plain text of the Second Amendment covers a person's conduct, the Constitution presumptively protects that conduct. See Bruen, 597 U.S. at 24, 142 S. Ct. at 2129-30. The government must then justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation. See id. As it pertains to the first prong on the Bruen test, the Supreme Court held that the Second Amendment protects the right of "ordinary, law-abiding citizens" to "carry a handgun for self-defense outside the

---

[2] See, e.g., McDonald v. Chicago, 561 U.S. 742, 130 S. Ct. 3020 (2010).

home." Id. at 10, 142 S. Ct. at 2122. Bruen did not overturn "longstanding prohibitions" like "possession of firearms by felons". See e.g., United States v. Roy, No. 22-10677, 2023 WL 3073266, at *1 (5th Cir. Apr. 25, 2023) (rejecting post-Bruen challenge to the constitutionality of Section 922(g)(1) on plain error review); United States v. Hickcox, No. 22-50365, 2023 WL 3075054, at *1 (5th Cir. Apr. 25, 2023). Justice Kavanaugh confirmed the constitutionality of restrictions on firearm possession by felons in his concurring opinion: "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." Bruen, 597 U.S. at 81, 142 S. Ct. at 2162 (Kavanaugh, J., concurring); see also United States v. Jackson, No. 23-30382, 2023 WL 8804575, at *1 (5th Cir. Dec. 20, 2023).

As it pertains to the historical analogy test, Section 922(g)(1) satisfies it as well. The plain text of the Second Amendment and historical context indicate that felons can be constitutionally disarmed. See United States v. Charles, No. 21-00154-01, 2023 WL 6358688, at *2 (W.D. La. Sept. 28, 2023). For instance, in Medina, the court explained that "[t]he commission of a felony often results in the lifelong forfeiture of a number of rights" tied to membership within the political community, including "the right to serve on a jury and the fundamental right to vote." Medina, 913 F.3d at 160. To be sure, the Court in Heller explained that the right secured by the Second Amendment is not unlimited and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Heller, 554 U. S. at 626, 128 S. Ct. at 2816.

Consistent with the line of reasoning upheld in Bruen and Heller, the Fifth Circuit Court of Appeals determined in United States v. Rahimi the constitutionality of 18 U.S.C. § 922(g)(8), which prohibits possession of a firearm by individuals who are subject to domestic violence restraining orders. See United States v. Rahimi, 61 F.4th 443 (5th Cir.), cert. granted, 143 S. Ct. 2688 (2023). In discussing whether the plain text of the Constitution covered Rahimi's conduct,

the words "the people" in the Second Amendment have been interpreted to refer to all members of a political community, not an unspecified subsection, or people who have developed sufficient connection with this country to be considered part of the community. See Rahimi, 61 F.4th at 451 (citing United States v. Verdugo-Urquidez, 110 U.S. 1056 (1990)). In denying the prosecution's arguments that Rahimi was excluded from "the people" because of the "law-abiding, responsible citizens" reference in Heller, the Fifth Circuit found Rahimi to be included within "the people" in the Second Amendment because he was not a convicted felon. [3]

Likewise, in United States v. Daniels, 77 F.4th 337 (5th Cir. 2023), the government argued that Daniels was excluded from "the people" under the Second Amendment because he unlawfully consumed marijuana. The Fifth Circuit disagreed with the government and stated:

> Indeed, Rahimi held that citizens accused of domestic violence still had Second Amendment rights. It reasoned that when Heller and Bruen used the phrase "law-abiding," it was just "shorthand" to "exclude from the [ ] discussion" the mentally ill and felons, people who were historically "stripped of their Second Amendment rights." [ ] All others are presumptively included in the Second Amendment's ambit. Because Daniels is not a felon or mentally ill, Rahimi treatment of the "law-abiding" monitor suggests that he has presumptive Second Amendment rights as well.

Daniels, 77 F.4th at 343. The court further reiterated:

> Once we conclude that Daniels has presumptive Second Amendment rights, the focus shifts to step two of the Bruen analysis: whether history and tradition support § 922(g)(3).

---

[3] The Fifth Circuit stated that convicted felons were not included within the meaning of "the people" in the Second Amendment. It further noted that "words such as 'law abiding, responsible citizens' were meant to exclude from the court's discussion groups that have historically been stripped of their Second Amendment rights, i.e., groups whose disarmament the Founders 'presumptively' tolerated or would have tolerated." Rahimi, 61 F. 4th at 452. Rahimi was not a convicted felon or otherwise subject to another "longstanding prohibition on the possession of firearms" that would have excluded him. Id. (citing Heller, 554 U.S. at 626-27, 128 S. Ct. 2783).

Id. Since Heller, Bruen, Rahimi, Daniels and other case law[4] firmly state that convicted felons are not a part of "the people" within the meaning of the Second Amendment, Young's argument fails because the plain text of the Second Amendment plainly does not cover his conduct in the matter *sub judice*.

In adopting the Bruen test upon which Young relies in challenging the constitutionality of 18 U.S.C. § 922(g)(1), Defendant argues that the Government failed to establish that the statute, as applied to him, is consistent with this Nation's historical tradition of firearm regulation. See Record Document 27 at 4. Young explains that the Government failed to show a "robust record of regulations demonstrating an accepted and enduring restriction on the Second Amendment right." See id. To support his argument, he asserts that because earlier generations addressed this "general societal problem", i.e., felon in possession, through materially different means, Section 922(g)(1) fails the Bruen test. See id at 4 and 6.

In opposition, the Government contends that the right described by the Second Amendment only extends to 'the people'—i.e., 'law-abiding, responsible' citizens keeping or bearing arms for 'lawful purposes.' See Record Document 28 at 6. As such, the Government asserts that Young's conduct is not protected by the Second Amendment and Bruen does not apply to the case at hand. See id. As it pertains to the historical aspect of firearm regulations, the Government argues that

---

[4] See, e.g., United States v. Thompson, No. 22-173, 2023 WL 3159617 (E.D. La. Apr. 27, 2023); United States v. Bazile, No. 23-34, 2023 WL 7112833 (E.D. La. Oct. 27, 2023); United States v. Washington, No. 23-00082-02, 2023 WL 7170645 (W.D. La. Oct. 31, 2023); United States v. Michael Conner et al., No. 23-54, 2023 WL 8474735, at *2 (E.D. La. Dec. 7, 2023); United States v. Shannon Lamon Anderson, No. 23-00180-01, 2023 WL 8655272, at *1 (W.D. La. Dec. 13, 2023); United States v. French, No. 23-00064-01, 2023 WL 7365232 (W.D. La. Nov. 7, 2023); United States v. Charles, No. 21-00154-01, 2023 WL 6358688, at *3 (W.D. La. Sept. 28, 2023); United States v. August, No. 23-00023-01, 2023 WL 7230037, at *1 (W.D. La. Nov. 2, 2023); United States v. Darrington, 351 F.3d 632, 634 (5th Cir. 2003); See, e.g., United States v. Darrington, 351 F.3d 632, at 633-34 (5th Cir. 2003).

the second prong of the Bruen test is futile because Young has two previous felony convictions. See id. Even if Bruen were applicable here, the Government continues, history demonstrates that legislatures have a wide latitude to exclude felons from political community and therefore Young would fail this second prong of the test. See id. at 8. The Government substantiated its arguments with legislative acts and treatises stemming from the 18th and 19th centuries, as well as broad spectrum of case law that dates from the late 19th century through 2023. See id. at 8-20.

The Court agrees with the Government. In both Heller and Bruen, the Supreme Court included the qualifier "law-abiding" when discussing those people who are facially protected by the Second Amendment. See Heller, 554 U.S. at 635, 128 S. Ct. at 2821 (holding the Second Amendment confers the "right of law-abiding, responsible citizens to use arms in defense of hearth and home"); Bruen, 597 U.S. at 31, 142 S. Ct. at 2134 (emphasizing that the petitioners were "two ordinary, law-abiding, adult citizens" protected as "people" under the Second Amendment). See also United States v. Washington, No. 23-00082-02, 2023 WL 7170645, at *2 (W.D. La. Oct. 31, 2023). With respect to historical interpretation of the Second Amendment, the Government provides an abundance of examples of historical statutes that provide an analogy to felon disarmament, i.e., laws that disqualified people from possessing firearms based on a judgment that certain members of society were untrustworthy parties to this land's social compact. These examples clearly demonstrate that colonial legislatures preserved the power and discretion to use status as a basis for disarmament.

Finally, Young argues that Bruen's holding governs over Heller's *dicta*. See Record Document 27 at 4. The holding provides that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." See id at 5 (citing Bruen, 597 U.S. at 17, 142 S. Ct. at 2126). *Dicta* in both Heller and Bruen state that "nothing in

our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." See Heller, 554 U.S. at 626-27, 128 S. Ct. at 2816; see also Bruen, 597 U.S. at 81, 142 S. Ct. at 2162. Both Justice Alito and Justice Kavanaugh, who were joined by Chief Justice Roberts, expressed in their concurring opinions their explicit intent to leave undisturbed government regulations prohibiting the possession of firearms by felons. For instance, Justice Alito stated: "Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor have we disturbed anything that we said in Heller or McDonald v. Chicago, 561 U.S. 742, 130 S. Ct. 3020 (2010), about restrictions that may be imposed on the possession or carrying of guns." Bruen, 597 U.S. at 72, 142 S. Ct. at 2157 (Alito, J., concurring). In his concurring opinion, Justice Kavanaugh as well as Chief Justice Roberts provided additional support for restrictions on felons in possession of firearms in the wake of Bruen by stating, "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations." Id. at 80, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring). Likewise, Justice Breyer, joined by Justice Sotomayor and Justice Kagan, stated, "I understand the Court's opinion today to cast no doubt on that aspect of Heller's holding." Id. at 129, 142 S. Ct. at 2189 (Breyer, J., joined by Sotomayor, J., and Kagan, J., dissenting).

Lower courts "are generally bound by Supreme Court *dicta*," particularly when the dicta are "recent and detailed." Hollis, 827 F. 3d at 448; see also United States v. Becton, 632 F.2d 1294, 1296 n. 3 (5th Cir. 1980) ("We are not bound by *dicta*, even of our own court. And though we accord it the greatest deference and persuasive force, mature consideration has convinced us that we should not follow it here. *Dicta* of the Supreme Court are, of course, another matter."). Thus, because Heller and Bruen are in fact, binding precedents, and even if the above-referenced language is characterized as *dicta*, at a bare minimum, it is entitled to great weight. See United

10

States v. Schnur, No. 23-65-1, 2023 WL 4881383, at n. 6 (S.D. Miss. July 31, 2023). Accordingly, this Court finds 18 U.S.C. § 922(g)(1) does not violate the Second Amendment and is constitutional as applied to Young.

**B. Constitutionality Of 18 U.S.C. § 924(c)(1).**

As noted supra, the Government charges Young with violating Section 924(c)(1)(A), which provides,

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime -
> [ ].
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A).

Adopting the same line of reasoning that was used to challenge constitutionality of Section 922(g)(1), Young argues that Section 924(c)(1)(A) is equally unconstitutional. The Government, on the other hand, argues that the Second Amendment's right does not protect criminal conduct and is "tied to firearm possession and use for lawful purposes by law-abiding citizens" only. See Record Document 28 at 21-22. The Government contends that, as such, Young's use of a firearm to facilitate violence and drug distribution is not entitled to Second Amendment protection. See id. at 24.

The Government correctly notes that constitutional rights do not extend to furthering criminal conduct. See Virginia v. Black, 538 U.S. 343, 359, 123 S. Ct. 1536, 1547 (2003); see also

International Brotherhood of Electrical Workers, Local 501, A.F. of L. v. National Labor Relations Board, 341 U.S. 694, 705, 71 S. Ct. 954 (1951); United States v. Lookretis, 422 F.2d 647, 651 (7th Cir. 1970); United States v. Baker, 373 F.2d 28 (6th Cir. 1967). As previously noted, the Supreme Court has repeatedly emphasized that the Second Amendment right is tied to firearm possession and use for lawful purposes by law-abiding citizens. See e.g., Heller, 554 U.S. at 625, 128 S. Ct. at 2816 ("[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes[.]"); see also McDonald, 561 S. Ct. at 780, 130 S. Ct. at 3044 ("[T]he Second Amendment protects a personal right to keep and bear arms for lawful purposes[.]"). In the wake of Heller and McDonald, circuit courts have consistently rejected Second Amendment challenges to Section 924(c), recognizing that the protections of the Second Amendment do not extend to gun use to advance or facilitate criminal conduct. See United States v. Charles, No. 21-00154-01, 2023 WL 6358688, at *3 (W.D. La. Sept. 28, 2023); see also United States v. Jackson, 555 F.3d 635, 636 (7th Cir. 2009) ("The Constitution does not give anyone the right to be armed while committing a felony[.]"); United States v. Potter, 630 F.3d 1260, 1261 (9th Cir. 2011) ("We join the Seventh Circuit in holding that § 924(c) is constitutional under the Second Amendment); United States v. Bryant, 711 F.3d 364, 370 2d 2013); United States v. Napolitan, 762 F.3d 297, 311 (3d Cir. 2014). Therefore, the Court concludes that Section 924(c)(1)(A) is constitutional.

## CONCLUSION

For the reasons elucidated above, the Court finds that 18 U.S.C. §§ 922(g)(1) and 924(c)(1)(A) are constitutional. Accordingly,

**IT IS ORDERED** that Young's Motion to Dismiss Counts Three and Four of the Indictment is hereby **DENIED**. An Order consistent with the instant Memorandum Ruling shall be issued herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 9th day of February, 2024.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE