UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 21-cr-00019 |
| VERSUS | JUDGE DONALD E. WALTER |
| KENRIC W YOUNG (01) | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Kenric Young ("Defendant") is charged with one count of possession with intent to distribute methamphetamine, one count of possession with intent to distribute marijuana, possession of a firearm in furtherance of drug trafficking, and one count of felon in possession of a firearm. The charges arise from a traffic stop and pat down of Defendant.

Before the court is Defendant's **Motion to Suppress (Doc. 38)**. Defendant argues that all evidence seized as a result of the traffic stop should be suppressed because (1) the traffic stop was not justified at its inception and (2) the officers did not have probable cause to search Defendant. For the reasons that follow, it is recommended that the motion be denied.

**Relevant Facts**

A hearing was held on the motion to suppress. The following facts, along with dashcam video of the stop,[1] were established by credible testimony. On the night of January 9, 2021, Cpl. William Moak and Cpl. Miles were on directed patrol in the Cooper

---

[1] The dashcam is not equipped with audio, so the video has no sound.

Road area. Tr. 7, 15. Moak was driving eastbound on Dr. Martin Luther King Drive when he saw a silver Chevrolet Monte Carlo. The Monte Carlo was driving westbound on Dr. Martin Luther King Drive, approaching Cpl. Moak's vehicle. The Monte Carlo made a left turn onto Wool Street but did not use a turn signal. Tr. 15.

Cpl. Moak made a right turn onto Wool Street to follow the vehicle. The Monte Carlo turned right onto Victor Street and parked in the middle of the roadway. Tr. 18. Cpl. Moak initiated the lights on his patrol unit to conduct a traffic stop for improper lane usage and impeding the flow of traffic. Tr. 19. The Monte Carlo did not pull over immediately. Instead, it turned from Victor Street onto David Rains Road and pulled into the driveway of a residence. Tr. 23-24.

Defendant, who was driving the Monte Carlo, opened his door and stepped out of the vehicle without being prompted to do so. Tr. 26-28. Defendant was wearing a hoodie-style sweatshirt and had his cell phone in his hand. He tossed the phone towards the trunk of his vehicle, and he lowered his hands as if he was going to put them in the front pocket of his hoodie. Tr. 27. Cpl. Moak saw a bulge in the front pocket of the hoodie. The officers told Defendant not to put his hands in his pockets. Tr. 27.

Cpl. Moak approached the front of the Monte Carlo and told Defendant to put his hands on the front of the car. Tr. 51. Other officers had arrived at the scene to assist. One of the officers, Cpl. Joel Davidson, patted Defendant down and removed two bags of marijuana and approximately $5,000 in cash from the front pocket of the hoodie. Tr. 29-30.

**Law and Analysis**

    **A. Initial Traffic Stop**

Defendant argues that the traffic stop was not justified at its inception. "The reasonableness of traffic stops and investigative detentions of motorists who are suspected of criminal activity is analyzed under the framework established in Terry v. Ohio, 392 U.S. 1 (1968)." United States v. Rosales-Giron, 592 Fed. Appx. 246, 250 (5th Cir. 2014); quoting United States v. Stevens, 487 F.3d 232, 244 (5th Cir. 2007). "Under Terry, we determine the reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." Id. Only the first Terry prong is at issue here.

For a traffic stop to be justified at its inception, an officer need only have reasonable suspicion that "some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." United States v. Breeland, 53 F.3d 100, 102 (5th Cir.1995). Cpl. Moak testified at the hearing that Defendant made a left turn without signaling. Tr. 15. Defendant then stopped in the middle of the Road on Victor Street, impeding the flow of traffic. Defendant argues that these infractions were not captured on video, but Cpl. Moak testified that the recording did not start until he activated his lights to stop Defendant. Tr. 39. The court finds Cpl. Moak's testimony that he witnessed the infractions to be credible. Accordingly, the stop was justified at its inception.

**B. Pat Down of Defendant**

Defendant argues that the pat down of Defendant was not justified. Defendant points to Cpl. Miles' written narrative of the stop, in which he stated that Cpl. Moak ordered Defendant to get out of the vehicle. Doc. 49-1. This contradicts Cpl. Moak's testimony that Defendant got out of the vehicle on his own. Tr. 27-28. The court finds Cpl. Moak's testimony to be credible. But even if Moak had ordered Defendant to exit the vehicle, an officer who has lawfully stopped a car may order the car's driver to exit the car. See Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6, (1977) (per curiam).

Once outside the vehicle, a lawfully seized driver or passenger may be patted down for weapons "upon reasonable suspicion that they may be armed and dangerous." See Arizona v. Johnson, 555 U.S. 323, 332, (quoting Knowles v. Iowa, 525 U.S. 113, 117-18, (1998)). "Such a limited intrusion does not violate the fourth amendment if the searching officer can point to specific and articulable facts suggesting actual physical risk to himself or others." United States v. Sink, 586 F.2d 1041, 1048 (5th Cir. 1978); United States v. Portillo-Saravia, 379 F.Supp.3d 600, 614 (S.D. Tex. 2019) (as a matter of course, an officer who has lawfully stopped a car may order the car's driver to exit the car and once outside, a lawfully seized driver may be patted down for weapons 'upon reasonable suspicions that they may be armed and dangerous').

Cpl. Moak testified that when he first initiated his lights to stop Defendant, Defendant continued driving. Moak stated that Defendant's failure to comply "elevate[d] the threat of the traffic stop." Tr. 23. When Defendant exited the vehicle, he attempted to put his hands in the front pocket of his hoodie. Tr. 27. Cpl. Moak could see in the front

pocket of the hoodie a large bulge that could have been a weapon. Tr. 28. Based on the totality of these circumstances, the officers had reasonable suspicion sufficient to conduct a pat down of Defendant.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 38) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of October, 2024.

Mark L. Hornsby
U.S. Magistrate Judge